**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT FOR 261 RICE AVENUE, REVERE, MASSACHUSETTS** | ) )  **MJ No. 13-MJ-4034 DHH** ) ) ) |

AFFIDAVIT OF TASK FORCE OFFICER BRIAN COHOON

I, Task Force Officer Brian Cohoon, being duly sworn, depose and state as follows:

A.      Agent Background

1.      I am a police officer with the Town of Braintree and have been so since 1985.  I currently serve in the rank of Detective and I am assigned full time to the Federal Bureau of Investigation (FBI) Boston Division as a Task Force Agent with the New England Organized Crime Drug Enforcement Task Force (OCDETF Strike Force).  During my time with the Town of Braintree police department I have been assigned to both the South Shore Drug Task Force and Metropolitan Law Enforcement Council.  I have also been sworn as a Deputy Sheriff in both Norfolk and Plymouth County.  At present, I not only conduct narcotics investigations in the town of Braintree but also on the State and Federal level as a Deputized Federal Agent with the FBI.

2.      Since July 2010, I have been assigned as a Task Force Officer ("TFO") defined as a sworn Special Federal Officer with the Federal Bureau of Investigations (FBI), and a sworn Special Deputy United States Marshal with the United States Marshals Service.  I am an investigative or law enforcement officer of the United States and authorized to exercise the powers of enforcement personnel set forth in section 878

Title 21 U.S.C.  I am deputized pursuant to Title 28, Federal Code of Regulations, sections 0.112 &0.19A, and am charged with the duty of investigating violations of the laws of the United States as stated in Title 28, Federal Code of regulations by order of the Attorney General of the United States.

3.      As part of my Police Academy training conducted by the Boston Police Academy and sponsored by the Massachusetts Criminal Justice Training Council, I was instructed in drug recognition and investigative techniques.  I have also acquired in excess of five hundred hours of specialized training relating to narcotics' enforcement at both the Federal and State level.  I have completed the Drug Enforcement Administration (DEA) 80-hour Narcotics School.  I am certified by the Federal Law Enforcement Training Center in Narcotics Investigations and Surveillance Techniques.  I am certified in the use of Narcotics Field Testing kits.  I have received numerous hours of training in Confidential Informant Recruiting and Development, Search Warrant Applications and Procedures, Raid Preparation and Procedures, Drug Recognition, Clandestine Drug Labs, Undercover Operations, Domestic Drug Interdiction, Firearms Investigations, Drug Conspiracy Investigations, Hidden Compartments in Motor Vehicles, Patrol Interdiction and Current Drug Trends.  I hold a Bachelors Degree in Criminal Justice.  I have executed and participated in numerous search warrants and the recovery of evidence.

4.      During my career as a Police Officer, I have participated in a number of arrests and investigations for violations of Massachusetts Controlled Substance Laws and federal criminal law.  I have been the affiant on over 30 search warrants and participated in the execution of over 100 search warrants.  As the result of my training and experience, I am familiar with the methods, routines and practices of individuals involved

in the sale and trafficking of narcotics.  I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver and dispense heroin, cocaine, marijuana and other controlled substances.  I have provided testimony in numerous District and Superior Courts in the Commonwealth of Massachusetts as well as in the United States Federal Courts

5.      I make each of the following statements based upon my own personal knowledge, belief, and information and the knowledge, belief and information of other Police Officers involved in this investigation.

6.      This affidavit is made in support of an application for a search warrant for 261 Rice Avenue, Revere, Massachusetts (the "Target Location"), a property held by a trust in the name of Marshall Dion.  A full description of the location to be searched is attached hereto as Attachment A, and is incorporated herein by reference.

7.      This affidavit does not contain each and every fact I know about this investigation.  This affidavit only sets forth sufficient facts to demonstrate probable cause for a search warrant.

B.      Summary of Investigation

8.      On July 5, 2013, the Honorable David H. Hennessy, United States Magistrate Judge for the District of Massachusetts, authorized a warrant for the search of Storage Unit 574 at the Town & Country Self Storage Facility, 140 Main Street, North Reading, Massachusetts.  In support of the United States' application to search Storage Unit 574, I submitted an Affidavit which contained a summary of the investigation as of that date.  A true and correct copy of my Affidavit submitted in support of the Application for that search warrant is attached hereto as Exhibit C and incorporated

herein by reference as though fully set forth herein.

9.     On July 3, 2013, the Drug Enforcement Administration (DEA) in Tucson,

Arizona, sought and obtained federal search warrants for 2 residences and 3 storage units

belonging to Marshall Dion in Tucson, Arizona.  As a result of the execution of those

search warrants, the DEA seized $888,432 in US currency.

10.     The first of the 2 residences searched by the DEA was 115 West

Limberlost drive, Apartment 5104, Tucson, Arizona.  During the search, agents seized

approximately $48,400 in cash located in a UPS box similar to the boxes of cash seized

from Dion by Junction City Police Department (JCPD) officers on June 18, 2013. Agents

also found numerous folders containing bank and other financial statements along with

documents regarding trust holdings in Dion's name.  One document, titled "Trust

Holdings f/b/o Marshall H. Dion", listed 12 properties with a total purchase price of

$2,194,700.  The document identified Dennis L. Ditelberg, Dion's brother in law, as the

individual holding title to all 12 properties.  Each property is listed as an "item" on the

document.  "Item 1" on the trust holding statement was the Target Location.  The agents

also found multiple U.S. Postal Service (USPS) shipping labels that listed a return

address of "M DION P.O. BOX 1017 ALLSTON MA."  The shipping address listed the

Target Location, "JOE DOE 261 RICE AV REVERE MA 02151."

11.     The second residence search by the DEA on July 3, 2012, was 1507 East

Prospect Lane, Tucson, Arizona.  That location was listed as item "3" on Dion's trust

holding statement.  During the search, agents seized a box containing approximately

$32,412 in cash located in the attic.

12.     On July 9, 2013, the USPS provided the FBI with a copy of an application

for a P.O. Box in Revere, Massachusetts.  Dated October 14, 2005, the application was

signed by Dion, and on the application he listed his address as "261 Rice Avenue,

Revere, Massachusetts" – the Target Location.

13.     It is my experience, as well as the experience of other agents with whom I

have worked and spoken, that narcotics traffickers not only use storage facilities to store

controlled substances, ledgers, scales, paraphernalia, but also other locations under their

dominion and control such as their residences.  Narcotics traffickers maintain these items

in secure locations such as their residences, in order to maintain control over them and to

keep these items out of the view of law enforcement.

14.     In addition, based upon my training and experience, and the training and

experience of other agents with whom I have worked and spoken, I know that:

      a.      narcotics traffickers must maintain, on hand, large amounts of U.S. Currency in order to maintain and finance their on-going narcotics business;

      b.      it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances.

      c.      it is common for drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

      d.      narcotics traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates or business entities to avoid detection of these assets by government agencies;

      e.      even though these assets are in the names of others, the narcotics traffickers actually own and continue to use these assets, and exercise dominion and control over them;

      f.      it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate

transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations, including storage units, which they maintain dominion and control over;

g. narcotics traffickers often utilize electronic equipment such as computers, cellular telephones, tablet computers (IPads, IPods), currency counting machines and telephone answering machines to generate, transfer, count, record and or store the information described above.  I have also encountered cellular telephones, billing records pertaining to cellular telephone accounts, telephones, and ledgers containing code numbers, customers and stash locations, all of which facilitate drug distribution;

h. when drug traffickers amass significant proceeds from the sale of drugs, they attempt to legitimize these profits through money laundering activities.  To accomplish these goals, drug traffickers utilize, among other mechanisms, domestic and international banks and their attendant accounts, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses, which generate large quantities of currency.  Traffickers often commingle narcotics proceeds with money generated by legitimate businesses;

i. narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies.  In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year which they feel can be traced and documented by the government.  The source of their income reported on these returns is usually falsely stated, misleading or generic in terms.  Retained copies of these returns are commonly kept by the traffickers in their residences, businesses, and other secure locations;

j. traffickers commonly maintain books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

k. traffickers take or cause to be taken photographs of themselves, their associates, and their property.  That these traffickers usually maintain these photographs in their possession.

15. Based on this training and experience, the evidence previously recovered from Dion's storage units in Massachusetts, the evidence recovered from the above-described searches by the DEA in Arizona, and the P.O. Box application submitted to the

USPS by Dion, I believe that documents, firearms, and other evidence of drug trafficking

and money-laundering activities will be found in the Target Location.

C.      Conclusion

16.     Based on the facts and circumstances contained in this affidavit, as well as

the collective training and experience of investigators involved in this investigation, your

affiant has probable cause to believe that located in 261 Rice Avenue, Revere,

Massachusetts, as more particularly described in Attachment A hereto, are controlled

substances, proceeds from the trafficking of controlled substances, documents, firearms,

and other evidence of drug trafficking and money-laundering activities as described more

particularly in Attachment B hereto, which items constitute evidence of violations of

Title 21, United States Code, Sections 841(a)(1), Possession with Intent to Distribute and

Distribution of Controlled Substances, Title 21, United States Code, Section 846,

Conspiracy to do the same, and Title 18, United States Code, Sections 1956 and 1957,

violations involving the laundering of monetary instruments.


        I declare that the foregoing is true and correct to the best of my knowledge and
belief.

_____
Task Force Officer Brian Cohoon



Subscribed and sworn to before me this _____ day of July, 2013.

**Jul 10, 2013**

_____
HONORABLE DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS